Court will proceed to the ninth case, Torres-Chavez v. United States. Mr. Ali. May it please the Court, Amir Ali for the petitioner appellant, Mr. Alfonso Torres-Chavez. My client, Mr. Torres-Chavez, rejected a guilty plea for the mandatory minimum sentence of 10 years' imprisonment based on his trial counsel's gross misadvice and instead went to trial where he faced 10 years to life. There's really no dispute before this Court that the allegations in Mr. Torres-Chavez's 2255 motion suffice, if proven to be true, to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness. Really, the only issue before the Court is whether those allegations which we would submit are specific in that they specify when that advice was given, where that advice was given, and precisely what Mr. Torres-Chavez's trial counsel said to him. The question is whether those allegations will be disregarded at this early stage when a district court hasn't even held an evidentiary hearing on those allegations. And we submit that this Court's case law would not allow that. To be very specific, Mr. Torres-Chavez's 2255 motion alleges that his trial counsel was ineffective during plea negotiations on three separate bases. One was for advising him to reject the plea for the mandatory minimum sentence in the face of overwhelming evidence and in the absence of a viable defense. The second is the misrepresentation that the government, quote, lacked the evidence to convict him. And the third is the misrepresentation of his sentencing exposure telling him that, quote, there is no way that he could get 10 years. Each of these independently, if true, would be a basis for finding that counsel's performance fell below an objective standard of reasonableness. For that reason, Mr. Torres-Chavez is entitled to a hearing. In fact, the standard under 2255 is even lower than that and says the question is whether the motion, the files, and the records conclusively show that he's not entitled to a relief. That's clearly not the case here. If you will, Your Honors, I'll start with the last basis I mentioned because I think it's the quickest, which is the misrepresentation as to the sentencing exposure that Mr. Torres-Chavez that there was, quote, no way he could get 10 years. The government doesn't challenge that that, if true, again, would show that Mr. Torres-Chavez's trial counsel was deficient. The government makes three arguments on that point. One, the government suggests that it was waived because it was raised in Mr. Torres-Chavez's memorandum of law as opposed to in the forum motion itself as we state in our brief and cite this court's authority. That is not a basis for finding a waiver in this case. Mr. Torres-Chavez's memorandum of law was clear and he signed it under penalty of perjury, which is not even a requirement under this court's pro se liberal pleading standards. The second argument the government makes is that it was not included within the certificate of appealability. Again, as we explain in our brief, that is not the case.  as to counsel's advice to reject the plea agreement, and we see this as an integral fact going to counsel's advice to reject the plea agreement. And third, the government suggests that the advice that there's no way he could get 10 years is immaterial because five months prior to receiving that private advice from his own counsel, at an arraignment proceeding, the prosecutor stated in open court that the mandatory minimum was 10 years. We think that is an implausible argument and an argument that this court should reject. It makes little sense to say that the defendant here should have credited the prosecutor's statement in open court five months prior to his defense counsel's own advice, particularly given that the record of that arraignment shows that Mr. Torres-Chavez was never even asked to acknowledge the prosecutor's statement. I refer this court to its decision in Julian v. Bartley. In that case, both the trial counsel and the trial court had specifically advised the defendant to the correct sentence in his case, 60 years. Seven weeks after that, defense counsel went to the defendant and said, actually, I think your maximum is 30 years. And what the government argued in that case was, again, the trial court's advising the defendant and the counsel's advising the defendant seven weeks earlier makes the subsequent misrepresentation immaterial. And this court said, no, it's the subsequent private advice provided by trial counsel which moots the prior statements made in court. And that's precisely the case here as well. Your Honors, I'll move on to the allegation that trial counsel misrepresented the strength of the government's evidence because I do think it's important for this court to appreciate just how overwhelming the evidence was here. And I'll point really specifically to the district court's finding here and specific statement here at the time of trial that the evidence against Mr. Torres-Chavez, that there was overwhelming evidence as to his guilt. And so if we think about how troubling it would be to find that Mr. Torres-Chavez isn't even entitled to a hearing here, here's how this case progressed. Mr. Torres-Chavez was told, reject this plea for the mandatory minimum sentence because the government doesn't have the evidence to convict you. In addition to that, the misadvices to the sentencing exposure which I've already discussed. Mr. Torres-Chavez says, okay, I'm going to take your advice and go to trial. After that, the trial judge states in writing that the evidence against you, Mr. Torres-Chavez, was overwhelming. A few weeks after that, Mr. Torres-Chavez's trial counsel withdraws on an irrevocable breakdown in the attorney-client relationship. And I point to that just as some objective evidence supporting Mr. Torres-Chavez's allegations. And so now you have Mr. Torres-Chavez who was advised the government lacks the evidence to convict him, finding out that in fact the evidence was, quote, overwhelming. And the government of course repeated that over and over again before this court on direct appeal. And what the court, when Mr. Torres-Chavez comes back to this court, or comes back to the district court and says, look, my trial counsel totally led me astray here. What the district court says is, you know, this sort of claim is reserved for those instances in which the evidence was overwhelming. That is, quote, not the case here. And if you see how troubling that is to someone like Mr. Torres-Chavez, who receives this advice, finds out it was totally wrong, tries to say it was totally wrong, and suddenly, you know, they take it back and say, no, the evidence wasn't overwhelming here. And we think that that would be, and it's especially troubling because we're not simply saying that you lose Mr. Torres-Chavez. We're saying we're not even going to give you a day in court on that claim that you were grossly misled. What was the maximum he could have gotten? The maximum he could have gotten was life in prison. And he got 14 years. He got 14 years, that's correct. The curious thing is why the government would offer 10 and be done with it, and how this guy, lawyer, goes in and brags and says, well, I'm, I can win this. And, you know, 14 years wasn't an extreme sentence. That's why I was sort of curious. Was the case weak or challengeable and not so overwhelming when the judge kind of got done with it? That's all I'm looking at. I understand where your strength is. This is where a guy could have gotten 10 years. And he said don't take it because they can't, no way you can get 10 years if that's what he said. When, of course, it's obvious that's what he's going to get. Your Honor, we don't know on this record what, why trial counsel would have given him this advice and why he did. There are reasons one could posit. I mean, it could be the case the trial counsel thought he could get a better plea offer. Or acquittal, maybe. Well, I think if it's possible that he thought he could get an acquittal, though, we think that the record here and the allegations here go far beyond trial counsel simply saying I think I can get an acquittal here, but it's up to you whether to plea. What trial counsel said was you should reject this plea. You should go to trial. And I think that goes far beyond simply thinking he could get an acquittal. But that's what you want. You want a hearing. Go back and get a hearing. That's right, Your Honor. I think it's clear that the record here doesn't conclusively show that Mr. Torres-Chavez isn't entitled to relief and Mr. Alley, let's assume success for you at the hearing. Mr. Torres faces the charge. He's aware, is he, of what the potential will be in a sentence could be in excess of 14 years? Your Honor, yes. Absolutely. I mean, that's been conveyed to him that he, if successful at this level and, again, at the hearing level. It has, Your Honor, and our responsibility to convey that. No, I just want to make sure that because I don't know what the government would do in an entirely new situation, that's all. And he's got a 14-year sentence off of a sentence that he wanted to accept of 10. It's his dice. I mean, it's our responsibility to carry out our constitutional responsibility, but I just it's important, I think, that he appreciate the proceeding, that's all. So, Your Honor, to answer your question specifically, yes, he has been advised that. And Your Honor's question is correct, that the District Court and I see that I'm running out of time. Oh, no. First of all, it's not the red light yet. You need not worry about time. But just to kind of more completely answer your question, the District Court would have great discretion here at sentencing under Lafler. And here, the sentencing range was 14 years to 17 years and the District Court selected the bottom range. But it would be within the District Court's discretion to offer or force the government to offer the same plea agreement. Here, of course, we don't know what that plea agreement even said because the government hasn't produced it. So that would be something that would come to light in the hearing. We've asked some questions. You'll have time for a rebuttal, Mr. Allen. Thank you. All right. Mr. Bakju? May it please the Court. We would ask the judgment of the District Court be affirmed. In this case, we do not believe that the District Court abused its discretion by denying the defendant relief without an evidentiary hearing. In this case, the District Court was guided by the United States Supreme Court's decision in Strickland v. Washington. Strickland v. Washington instructs the courts to give a strong presumption of reasonableness to the conduct of counsel both at trial and in subsequent cases to the plea negotiations that may precede trial. And in particular... Let me just stop you there because we're familiar with the Strickland standards. So my question is because it seems to me the judge made the conclusion about the overwhelming evidence after the trial was over and took all that into account rather than looking at what the defense counsel knew at the time. And I just don't see how without a hearing we could know that. So Judge... We could know what the defense counsel knew at the time when the advice was given. Judge Williams, my response to that is that under Strickland and the cases that follow, including Burt v. Titlow and Cullen v. Penholster, the Supreme Court is instructed that a court, in reviewing whether or not defense counsel has been ineffective, is to entertain the possible reasons for why defense counsel would give the advice that they have given. It's not the government's burden to actually affirmatively show, through the introduction of evidence, why counsel decided to do what counsel did, but merely to look at the record and offer an explanation as to why that advice was potentially proper. In this case, Judge, what we have is a situation where defense counsel, or I should say the defendant in his petition, merely suggests that he got bad advice. He doesn't tell the court why that advice is bad, just says, I got bad advice and I lost at trial. Under those circumstances, as the court said in Titlow, you can't turn the presumption on its head by then requiring the government to come forward with affirmative evidence that the defense attorney was actually performing or had a reason for what he did or why he acted the way he did. What I can say from looking at the record is the judge knows at the date of arraignment that she issued a deadline for the production of Rule 16 material. That obviously would indicate that the government was tendering discovery to the defendant prior to trial. It's reasonable to think that prior to trial, defense counsel knew who the government's witnesses were going to be. But here's the thing. The record doesn't show whether at the time of the alleged plea offer the freelander knew about Lucatero's testimony, the linguist's testimony, the recordings, or the flight record. Judge, again, the burden of demonstrating what the defendant knew or what defense counsel knew is not a burden that rests with the government. What we have in this case is that the defendant merely says, I got bad advice without explaining why the advice was bad. It's reasonable to think that defense counsel knows prior to trial what the government's evidence is. There is evidence in the record that we tendered discovery to the defendant, as is the normal practice in this district, well in advance of the trial. And so the government, I think, is well within its bounds in saying that let's look at the record that's actually compiled at trial to see what it is that the defense attorney did at trial to determine why he would offer the advice that this was not an overwhelming case. And, in fact, this was not in advance of trial, six months prior to trial, a situation where it was a foregone conclusion that the defendant would be convicted. Yes, it may have been the case that after trial the government did have a very strong case and presented a strong case. But it's sort of like saying if you're watching the Super Bowl that everybody should have known that the Broncos were going to beat the Panthers after the game was over. Before the game began, we don't know how is cross-examination going to go for the government's witnesses. Six months prior to trial, there was only one witness, a flipper, if you will, that was in a position to identify the defendant's voice. And let me go back to talking about some of that evidence in greater detail. There was no surveillance of this defendant at any point during the investigation that tied him to La Familia Michoacana, this drug trafficking organization. There was no forensic evidence that tied the defendant to La Familia Michoacana. His fingerprints weren't found on any drugs. We had seized ledgers during the course of this investigation, and none of those ledgers had the defendant's name on them. They had the flipper's name on them. There was no other indication that the defendant was involved until one year after Mr. Lucatero was arrested, he began cooperating with the government. It was at that point that the government then focused in on the defendant and, in fact, in one instance, the defense attorney at trial was able to get a concession from the agent that testified that said, you guys had no idea who my guy was until Mr. Lucatero pointed the finger at him. Mr. Lucatero had a plea agreement and was a subject to caution and care instruction. This case, in fact, is very much like the Almanaca case, which was issued by this court again, and that was a situation where the Almanaca case, this court decided that an evidentiary hearing was not necessary in a situation where the defense attorney had suggested to the client that he should proceed to trial. In that case, the defense attorney told his client that the government had nothing on him, and the case was very similar to this one in the sense that the evidence at trial really depended heavily upon the testimony of a flipper. Now, after the case was over, yes, I think the court was correct in saying that we had established the defendant's guilt through a powerful showing, but prior to trial, there is that body of case law in Strickland and other cases that says we're not supposed to second guess a defense attorney. We're not supposed to look at these types of issues in the spectrum of hindsight, knowing what the result is. But in this case, as opposed to Alman, there was much more evidence that the government had. They had Luca Terrell's testimony about his drug dealing history with Torres, the phone calls, the flight record, the witness testimony. She was 95% certain of the ID. That was strong evidence that was not present in that other case. Well, Judge, the evidence that the government had was subject to testing by the defense counsel. First of all, the primary witness that implicated the defendant was a flipper who got a deal. Defense counsel was also able to challenge the primary witness that the government had by saying that he contradicted his grand jury testimony at trial. Then, obviously, he had a motive to lie in this case because he was trying to get himself out of trouble, that he had previously blamed the defendant for his drug trafficking activity when he had been stopped by police on a prior occasion in a different matter. So there was fertile ground for the defense attorney to work with in this case because if it were not for the flipper, the primary flipper in this case, that was the one who had fingered the defendant, the government would have been in a position to bring these charges in the first instance. Yes, we did have a monitor that corroborated what the flipper said, but again the monitor was also subject to confirmatory bias as well. She worked for the government and after the flipper had identified the defendant's voice, she came along and confirmed that identification. So there is this conflation between what the district court says after the trial and the contest is over versus what trial counsel's position was six months prior to trial. And if I might speak briefly on the issue of the mandatory minimum argument, our view is that that argument was not actually made in the district court. If we take that argument in context and understand the sentence, the single sentence that's referred to in reference to that argument, it comes at the end of a paragraph, which in the sentence preceding it ends with Jack Friedlander, he was sure that he could get Torres Chavez out of jail due to the lack of evidence, and then comes a sentence, trial attorney Jack Friedlander assured Torres Chavez there's no way he could get ten years. This is part of a parcel of statements that come throughout the motion and the memorandum where there are assurances of a good outcome or a projection of a good outcome by defense counsel. It's not a separate claim. There was never any contention that the defendant was unaware of the mandatory minimum. You would expect, and one of the reasons why we point to the affidavit is the affidavit never says at some point, I had no idea there was a mandatory minimum in play. I was misled about that. And in fact, I brought up the transcript from the arraignment and the prosecutor that attended the arraignment said well, the court asks anything else. The prosecutor asks no judge, unless you want to advise the defendant of the maximum penalties, and then the court says, why don't you do that please? And then the prosecutor advises the defendant of the mandatory minimum as to count one, and then the court, and as to the other sentence counts as well, then the court says, and Mr. Torres Chavez, if you cannot afford an attorney to represent you in this matter, sir, the court will appoint one to do so. Do you understand that, sir? And the defendant answers, yes, I understand. In immediate succession. So this contention that the defendant somehow was unaware of the mandatory minimum, which is a contention that is nowhere to be found, I think, in his certificate of appealability, which again talks about this whole notion not even of evidence, he actually expressly, if you look at page 8 of his certificate of appealability, if I may just finish my answer, if you look at page 8 of his certificate of appealability, he actually addresses this idea of, I wasn't even interested in the evidence at trial. What I was interested in was having the court address whether or not my attorney had some sort of conflict because he had a bad relationship with the U.S. Attorney's Office. There was not even a reference to this issue of evidence, which is now, as we suggest, only been raised on appeal, and has been waived. If there are no further questions, we'd ask the court to affirm the judgment of the district court. Thank you, Mr. Fox. Mr. Alley, two minutes. Thank you, Your Honor. I'll just make two quick points in rebuttal. First, I'd like to comment briefly on the evidence in distinguishing Almanacid. It was mentioned previously and discussed the chief witness, Luca Terra, who knew the defendant for five to nine years and identified him both his voice and in court, but I just want to comment on how strong the corroborating evidence was because I think that some of the statements made just now weren't quite correct. The contract linguist who identified Mr. Torres-Chavez's voice was not an employee of the government and specifically testified she was not an employee of the government, but was a contractor who was hired by the government, and what she testified was this. She testified that she's familiar with virtually every single dialect in Mexico, including the specific dialect by Mr. Torres-Chavez. The government says that she was impeached, for instance, on the basis that she doesn't have training. In fact, when asked that question, she said, I do have training, and she had previously testified just a few pages earlier in the transcript that she's trained every day in this nature, and that again, she understands all of the dialects, and she testified that she was 95% certain that this was him. And then I'd just briefly like to comment on the flight records, which I think are other powerful, independent corroborating evidence, which you didn't have in a case like Almanac. Almanac involved only cooperating witnesses who tied the defendant to the fence, or essentially only cooperating witnesses. Here, what you had was a border crossing document showing an individual named Alfonso Torres-Chavez entering in San Diego. You had flight records showing a flight from San Diego to Phoenix to Chicago in the name Alfonso Torres. Shortly after the offense that we're talking about here, you have a flight record leaving Midway Airport, going back to San Diego, I can't remember if it was through Phoenix or not, in the name Alfonso Chavez. Now, the only impeachment as to that powerful evidence, which was corroborated by the voice recordings which placed Mr. Torres-Chavez in those places throughout that timeline was that the name on the record was Alfonso Chavez and Alfonso Torres, and not Alfonso Torres-Chavez. And that was, we think, belied by the powerful evidence here. I just want to revisit what Mr. Torres faced by way of a maximum before trial. What was it again? Before trial, his maximum sentence was life in prison on two of the separate counts. Now, what are we to make of a defense lawyer's assessment of a plea offer of 10 years against the potential of a life sentence after trial? How should a court in this instance look at what looks like a relatively modest I mean, 10 years is a long sentence, but a relatively modest against maximum sentence. You're a defense lawyer interpreting that offer from the government. Can that in any way speak to, in the mind of a defense lawyer, the case isn't the strongest case if the government is willing to make that plea? Your Honor, I don't think so, and I think this Court has said just the opposite, that when it's the mandatory minimum sentence that's even more evidence that it could be affected. And in terms of what trial counsel knew about the evidence, I very much agree that we don't know the specifics of that. But what we do know, and this was referred to briefly in the government's argument, is that at the arraignment proceeding, the government said that it was prepared to make its 16.1 disclosures. And so the evidence I just described, the flight records, the voice recordings, and there were 26 voice recordings, 12 of which included his voice, all would have been, almost certainly would have been known by defense counsel, because the arraignment proceeding was five months prior to this advice being given. And so I think the best inference from the record here is that he knew about the vast majority of evidence. And so I think that that's not the inference the Court should draw, that he thought it would be a weak case. In fact, I think the better inference is the opposite, that in the face of this evidence, advising to affirmatively reject the plea would be unfeasible. Our thanks to all counsel. An additional thanks to Mr. Alley, Mr. Levinson, for accepting this appointment and ably representing the administrators. Case is taken under advisement. The Court will stand in recess.